IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FREDERICK L. BANKS, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:13-cv-4848-L |
| § | |
| AETNA LIFE INSURANCE § | |
| COMPANY, FEDERAL EXPRESS § | |
| CORPORATION, and FEDERAL § | |
| EXPRESS CORPORATION SHORT § | |
| TERM DISABILITY PLAN, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff's Motion to Remand Claim for Administrative Reconsideration [Dkt. No. 20] has been referred to the United States magistrate judge pursuant to an order of reference from United States District Judge Sam A. Lindsay. See Dkt. No. 35. The undersigned issues the following findings of fact, conclusions of law, and recommendation that Plaintiff's Motion to Remand Claim for Administrative Reconsideration [Dkt. No. 20] should be granted for the reasons and to the extent explained below.

**Background**

Defendant Federal Express Corporation Short Term Disability Plan ("Plan") was created by Defendant Federal Express Corporation ("FedEx") to provide short-term disability ("STD") benefits for employees. FedEx is the administrator of the Plan, and Defendant Aetna Life Insurance Company ("Aetna") is the claims paying

administrator for the Plan. Covered employees are eligible for STD benefits from the Plan if the employee becomes disabled.

Plaintiff Frederick Banks, a FedEx courier, applied for STD benefits beginning December 11, 2012 for chronic pain following complications from a prior hernia surgery. Plaintiff had exploratory surgery on January 8, 2013 to try to determine the cause of his pain. Defendant Aetna (1) granted STD benefits for his surgery and recovery from surgery for the January 8, 2013-to-March 10, 2013 period; (2) denied STD benefits for the December 11, 2012-to-January 7, 2013 period before his surgery; and (3) denied STD benefits for the March 11, 2013-to-current period after his recovery from surgery.

On December 12, 2013, Plaintiff filed a complaint under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). *See* Dkt. No. 1; *see also* Dkt. No. 23 (amended complaint).

On May 16, 2014, Plaintiff filed a Motion to Remand Claim for Administrative Reconsideration, seeking administrative reconsideration of the denial of his STD claim. *See* Dkt. No. 20. Plaintiff seeks remand on the basis of failures to substantially comply with ERISA's procedural requirements but also on the basis of equity to obtain administrative reconsideration based on records not presented to Defendant Aetna until after this lawsuit was filed, as Plaintiff's motion explains:

> At the time of Aetna's final denial of short-term disability benefits to Plaintiff on November 6, 2013, the cause of Plaintiff's continuing pain was not yet determined. However, Plaintiff has been pursing continuing care, and between November 2013 and February

>2014, Plaintiff obtained a definitive diagnosis and potential recommendation for surgery. Specifically, Plaintiff's treating neurologist has concluded that Plaintiff has suffered a compromise of nerve function in the area of the former surgery and needs nerve blocks, and perhaps ultimately resection of nerve tissue, in order to obtain relief from his chronic abdominal pain. Since counsel for Aetna made his appearance in January [2014], Plaintiff's counsel has provided him with the medical records reflecting such diagnosis and recommendation for surgery (copies of which are attached as Exhibit C). Plaintiff's counsel has further suggested remand of Plaintiff's claim for administrative reconsideration in light of the fact of a diagnosis and treatment plan including surgery having been obtained for Plaintiff's continuing abdominal pain when no diagnosis or plan had been made as of the November 6, 2013 date of Aetna's final denial of short-term disability benefits to Plaintiff.

Dkt. No. 20 at 6.

The Court heard oral argument on the motion on September 19, 2014, *see* Dkt. No. 41, and afforded Defendant an opportunity for supplemental briefing on certain issues, but Defendant has not taken that opportunity.

### Administrative Proceedings

**A. Initial Denial for December 11, 2012-to-January 7, 2013 Period**

In a February 14, 2013 letter [Dkt. No. 20-1 at 4-5; Dkt. No. 42-3 at 48-49], Defendant Aetna denied Plaintiff's STD claim for the December 11, 2012-to-January 7, 2013 period for insufficient objective findings to support a functional impairment.

Defendant Aetna relied on Section 4.1 of the Plan:

>No benefits shall be paid under the Plan unless and until the Claims Paying Administrator has received information sufficient for the Claims Paying Administrator to determine pursuant to the terms of the Plan that a Disability exists. The burden of proof for establishing a disability is on the Covered Employee.

Dkt. No. 20-1 at 4.

Defendant Aetna also relied on Section 1.1(j) of the Plan:

> Disability or Disabled shall mean Occupational Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms. In the absence of significant objective findings, conflicts with managers, shifts and/or work place setting will not be factors supporting disability under the Plan.

*Id.*

In the same February 14, 2013 letter, Plaintiff's STD claim was approved from January 8, 2013 with no end date established for laparoscopic surgery removing mesh from a prior hernia repair, exploring his right groin, and removing a lymph node and lipoma.

**B. Approval for January 8, 2013-to-March 10, 2013 Period and Initial Denial for March 11, 2013-to-Current Period**

In an April 30, 2013 letter [Dkt. No. 20-1 at 6-7; Dkt. No. 42-2 at 4-5], Defendant Aetna set the end date for the approved STD-benefits period as January 8, 2013 through March 10, 2013 and denied benefits for the March 11, 2013-to-current period. Defendant Aetna found no functional impairment and stated that the data received showed as of February 20, 2013 that Plaintiff was 90% better with some mild tenderness in the scar. Defendant Aetna concluded that there was no evidence of recurrent hernia or that Plaintiff was unable to perform the core functions of his heavy occupation. Defendant Aetna again relied on Sections 4.1 and

1.1(j) of the Plan and stated that it would consider an appeal for its denial of Plaintiff's disability claim for the March 11, 2013-to-current period.

**C. Appellate Denial for December 11, 2012–to-January 7, 2013 Period**

In a May 1, 2013 letter [Dkt. No. 20-1 at 8-9; Dkt. No. 42-3 at 41-42], Defendant Aetna informed Plaintiff that the Aetna Appeal Review Committee ("ARC") reviewed the initial February 14, 2013 denial for the December 11, 2013-to-January 7, 2013 period. ARC denied the claim because of a lack of significant objective findings. ARC relied on Sections 4.1 and 1.1(j) of the Plan.

In an October 1, 2013 letter [Dkt. No. 20-2 at 2-5; Dkt. No. 42-2 at 6-9], Plaintiff's attorney notified Defendant Aetna that he was appealing the initial April 30, 2013 denial for the March 10, 2013-to-current period and the final May 1, 2013 appellate denial for the December 11, 2012-to-January 7, 2013 period. Plaintiff's attorney stated that Defendant Aetna obtained peer reviews dated February 3, 2013 and April 2, 2013 to help determine Plaintiff's December 11, 2012-to-January 7, 2013 claim but that they were not provided. Plaintiff's attorney stated that the peer review obtained for the March 10, 2013-to-current period also was not provided with the denial.

In an October 4, 2013 letter [Dkt. No. 20-1 at 2-3], Defendant Aetna acknowledged receiving Plaintiff's appeal letter and clarified claim periods and appeals. In two letters dated October 8, 2013 [Dkt. No. 20-2 at 42-43] and October 28, 2013 [see Dkt. No. 20-2 at 44], Plaintiff's attorney submitted additional records and asked they be included in the administrative record.

**D. Appellate Denial for March 11, 2013-to-Current Period**

In a November 6, 2013 letter [Dkt. No. 20-1 at 10-11; Dkt. No. 42-1 at 2-3], Defendant Aetna informed Plaintiff that ARC reviewed the April 30, 2013 denial for the March 11, 2013-to-current period and denied the claim for a lack of significant objective findings. ARC relied on Sections 4.1 and 1.1(j) of the Plan.

ARC reviewed all appeal information submitted, all medical documentation, and the peer physician reviews dated February 3, 2013, April 2, 2013, April 21, 2013, and October 18, 2013. ARC found no objective examination findings to support functional impairment from March 11, 2013 to current. Because Plaintiff failed to secure a position after 90 days of personal leave, his employment was terminated as voluntary effective July 31, 2013. ARC considered all submitted documentation, noted the conclusions of the peer physicians, and determined no significant findings substantiated a functional impairment that would render Plaintiff unable to perform his heavy job duties as a Courier/DOT from March 11, 2013 to current.

**E. Physician Peer Reviews**

Defendant Aetna only provided an administrative record of Plaintiff's disability claims on May 16, 2014, six months after his action was filed in this Court. *See* Dkt. No. 32 at 8-9 n. 5.

Defendant Aetna relied on MES Solutions, a medical records review company, to evaluate Plaintiff's disability claims, and the same two physicians reviewed Plaintiff's initial claim and his appeal.

**1. Level One Health Care Consultation**

- On February 3, 2013, Dr. Armand Katz reviewed Plaintiff's medical records and found no functional impairment. *See id.* at 20-23.
- On April 2, 2013, Dr. Marc Lessin reviewed Plaintiff's medical records and concluded no functional impairment. *See id.* at 24-28.

**2. Level Two Health Care Consultation**

- On April 21, 2013, Dr. Lessin reviewed Plaintiff's medical records and concluded no functional impairment. *See id.* at 8-11.
- On October 18, 2013, Dr. Katz reviewed Plaintiff's medical records and concluded no functional impairment. *See id.* at 12-15.

## Legal Standards

Challenges to ERISA procedures are evaluated under the substantial compliance standard, such that technical noncompliance with ERISA procedures will be excluded so long as the purpose of 29 U.S.C. § 1133 has been fulfilled. *See Lafleur v. Louisiana Health Serv. and Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009). The purpose of Section 1133 is to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial. *See id.* The substantial compliance test also considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances, including oral communications. *See id.*

A full and fair review requires the participant to know what evidence the decision-maker relied on, to have an opportunity to address the accuracy and reliability of the evidence, and to have the decision-maker consider the evidence presented by both parties prior to reaching and rendering a decision. *See id.*

Substantial compliance requires meaningful dialogue between the beneficiary and the administrator. *See id.*

## Analysis

ERISA regulations dictate that certain procedures are required to provide a claimant with a reasonable opportunity for a full and fair review of a benefit determination. The undersigned concludes, based on the administrative record, that Defendant Aetna failed to meet the following procedural requirements: (1) disclosing information relied on during the initial and appellate benefit determination pursuant to 29 C.F.R. §§ 2560.503-1(h)(2)(iii), 2560.503-1(i)(5), and 2560.503-1(j)(3); (2) identifying medical experts pursuant to 29 C.F.R. § 2560.503-1(h)(3)(iv); and (3) avoiding reliance on the same experts during the initial and appellate benefit determination pursuant to 29 C.F.R. § 2560.503-1(h)(3)(v).

**A. Equitable and Legal Considerations Supporting Remand**

Relying on general principles of equity, Plaintiff contends that the Court has authority to remand Plaintiff's claim for administrative reconsideration based on his previously unavailable diagnosis. *See* Dkt. No. 20 at 11-12. The United States Supreme Court recognized in *Varity v. Howe*, 516 U.S. 489 (1996), and *Cigna v. Amara*, 131 U.S. 1866 (2011), that equitable remedies may be available to ERISA plaintiffs. But *Varity* and subsequent lower court cases indicate that that relief is not available where an adequate remedy exists under other ERISA provisions. *See Varity*, 516 U.S. at 512 (equitable relief is appropriate only in situations where no other remedy is available); *see also Leach v. Aetna Life Ins. Co.*, No. WMN-13-2757,

2014 WL 470064, at *4 (D. Md. Feb. 5, 2014). ERISA's civil enforcement provisions are the exclusive vehicle for actions by ERISA plan participants and beneficiaries, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987), and the courts may not infer additional causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies, *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993).

Plaintiff seeks a remand on equitable grounds for administrative reconsideration of Plaintiff's short-term disability benefit claim to allow for consideration of medical records created after, and as such not available before, the date of denial of Plaintiff's claim. Plaintiff asserts that the additional records afford an objective diagnosis for chronic abdominal pain, post-hernia surgery, being suffered by Plaintiff that it was claimed in the denial was lacking for certain periods. Plaintiff asserts that the deadlines established by the Plan preclude Plaintiff and his doctors from fully exploring the reasons for his condition in time to have those records presented during the previous administrative process.

Plaintiff essentially asks the Court to – on the basis of general equitable authority under ERISA, and citing no authority for this request other than a case dealing with the Court's equity powers generally and an ERISA plaintiff's entitlement to a jury trial, *see* Dkt. No. 20 at 6 – order the Plan to change, as to Plaintiff, the deadlines and structures set by the Plan's provisions. Although Plaintiff invokes 29 U.S.C. §1133 and 29 C.F.R. § 2560.503-1(b) and their

requirements that "[e]very employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations," Plaintiff has not actually asserted that the Plan's procedures violate the governing statute and regulations that might preempt or trump the Plan's provisions. Rather, Plaintiff contends that it is very unusual for a Plan's procedures and deadlines not to permit Plaintiff's timely and fully explaining the reasons for his condition as he needed to do to offer proof of disability in accordance with the applicable disability standard under the governing Plan and thus invokes equity to ask the Court to require the Plan, on remand, to administratively reconsider Defendant's final denial "so as to avoid the necessity of continued litigation of his short-term and long-term disability benefit claims." Dkt. No. 20 at 7-8.

Defendant opposes a remand because the Plan provides Plaintiff with a final determination and single appeal within the deadlines set by the Plan and because, Defendant argues, citing *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), the Plan's terms control.

While the undersigned can understand that Plaintiff is frustrated by the circumstances presented here, the undersigned agrees with Defendant. Plaintiff's invocation of equity would push the Court too far into rewriting the Plan's terms where Plaintiff invokes equity to address the situation because he cannot argue that – leaving aside how the review process was implemented in this particular matter,

as discussed below – the Plan's procedures, including its deadlines, violate the governing statute or regulatory mandates in a manner that requires remand.

Plaintiff brings his lawsuit pursuant to 29 U.S.C. § 1132(a)(1)(B) – "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" – and not 29 U.S.C. § 1132(a)(3) – "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Plaintiff's equity-based request for remand for administrative reconsideration with new medical records goes beyond the relief appropriate under Section 1132(a)(1)(B) or, for the matter, Section 1132(a)(3), where Section 1132(a)'s provisions "focus on what a plan provides" and "authorize such relief as will enforce *the terms of the plan* or the statute" and not "appropriate equitable relief' *at large*," *McCutchen*, 133 S. Ct. at 1548 (emphasis in original; internal quotation marks omitted); *accord ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 528 n.10 (5thhCir. 2013) (noting "the fact that § 502(a)(3) serves to enforce the *contractual terms* of ERISA plans" (emphasis in original)).

Accordingly, the undersigned concludes that Plaintiff's case should not be remanded pursuant to general equitable principles to have any previously unavailable diagnosis or medical records considered.

But, as discussed more fully below, the undersigned concludes that Plaintiff has properly invoked the Court's authority to remand based on Defendant Aetna's failure to provide full and fair review pursuant to 29 U.S.C. § 1133 due to violations of ERISA's procedural requirements. Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with ERISA's procedural requirements. *See Lafleur*, 563 F.3d at 157.

**B. Administrative Record**

Plaintiff claims that Defendant Aetna is required to consider all medical records, including those generated after Plaintiff's denials, based on *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). Defendant Aetna argues that the administrative record is limited to the records before the plan administrator. In ERISA cases, courts generally cannot consider evidence outside the administrative record. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 n.3 (5th Cir. 2006); *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 515-16 (5th Cir. 2010). The United States Court of Appeals for the Fifth Circuit in *Vega* held that, if a claimant submits additional information to the administrator and requests the administrator reconsider the decision, that additional information should be treated as part of the administrative record but that "the claimant only has an opportunity to make his record before he files suit in federal court." 188 F.3d at 300, 302, n.13.

In *Hamburg v. Life Insurance Company of North America*, the Fifth Circuit followed *Vega* and explained that the administrative record consists of relevant

information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. 470 F. App'x 382, 385-86 (5th Cir. 2012). The Court of Appeals explained that each party should be encouraged to make its record before the case comes to federal court. *See id.*

Thus, pursuant to *Vega*, medical records that Plaintiff provided to Defendant Aetna before filing suit in November 2013 and in a manner that gave Defendant administrator a fair opportunity to consider them properly comprise part of the administrative record here. But this does not include records that Plaintiff acknowledges were only provided to Defendant in January 2014 or later. *See* Dkt. No. 20 at 6.

With the Court's leave, Defendant has now filed a copy of the Administrative Record, which includes records on which the parties had previously relied – and to which the undersigned in many instances cites herein – in connection with their briefing on Plaintiff's Motion to Remand Claim for Administrative Reconsideration [Dkt. No. 20]. *See* Dkt. No. 42. As the undersigned discussed with counsel at oral argument, the undersigned concludes that the filing and consideration of the complete administrative record in connection with Plaintiff's Motion to Remand Claim for Administrative Reconsideration [Dkt. No. 20] fully addresses Defendants' concerns that a remand for administrative reconsideration by Defendants is inappropriate prior to the parties' filing cross-motions for summary judgment on Plaintiff's Section 1132(a)(1)(B) claim.

**C. *Metzger*'s Two-Phase Disclosure Requirement**

Turning, then, to Plaintiff's request for remand based on Defendant Aetna's alleged failure to provide full and fair review pursuant to 29 U.S.C. § 1133 due to violations of ERISA's procedural requirements, Plaintiff claims that Defendant Aetna failed to provide required disclosures pursuant to 29 C.F.R. §§ 2560.503-1(h)(2)(iii), 2560.503-1(i)(5), and 2560.503-1(j)(3).

In *Metzger v. UNUM Life Insurance Company of America*, the United States Court of Appeals for the Tenth Circuit explained that ERISA imposes a two-phase disclosure requirement. 476 F.3d 1161, 1167 (10th Cir. 2007). First, relevant documents generated or relied on during the initial claims determination must be disclosed prior to or at the outset of an administrative appeal. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii); *Metzger*, 467 F.3d at 1167. Second, relevant documents generated during the administrative appeal, along with the claimant's file from the initial determination, must be disclosed after a final decision on appeal. *See* 29 C.F.R. § 2560.503-1(i)(5); *Metzger*, 467 F.3d at 1167. So long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnosis, this two-phase disclosure is consistent with full and fair review. *See Metzger*, 467 F.3d at 1167.

Technically, Plaintiff did not request the physician peer reviews, but Plaintiff's attorney complained in an October 1, 2013 letter that Defendant Aetna obtained peer reviews but had not provided them. *See* Dkt. No. 20-2 at 2. Essentially, Plaintiff's statement about missing peer reviews is a demand for

disclosure. As of the October 1, 2013 letter, Plaintiff exhausted his administrative appeal for the December 11, 2012-to-January 7, 2013 period and received an initial denial for the March 11, 2013-to-current period. Pursuant to subsections (i)(5) and (j)(3) of the Plan, Defendant Aetna should have provided access to all relevant documentation on which it relied to deny Plaintiff's claim for the December 11, 2012-to-January 7, 2013 period as Plaintiff had exhausted his appeal. Pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii), Defendant Aetna should have provided access to documentation it relied on to make its initial denial for Plaintiff's claim for the March 11, 2013-to-current period.

Plaintiff claims that Defendant Aetna did not provide any documents supporting its denials until May 16, 2014, six months after Plaintiff filed his complaint. *See* Dkt. No. 32 at 8-9 n. 5. Defendant Aetna may be correct that *Metzger* does not allow for an endless cycle of submission and review, *see* Dkt. No. 30 at 13, but it also prohibits Defendant Aetna's belated disclosure of the administrative record six months after Plaintiff filed his complaint.

**D. Identity of Medical Experts, 29 C.F.R. § 2560.503-1(h)(3)(iv)**

Plaintiff claims that Defendant Aetna failed to identify the medical experts from whom it obtained advice on Plaintiff's STD claim. Defendant contends that it complied because it identified in each denial letter that a general surgeon peer physician reviewed all the clinical data that was received. *See* Dkt. No. 30 at 19.

Defendant's generic reference to a general surgeon does not constitute compliance with the identification requirement. *See Provencio v. SBC Disability*

*Income Plan*, No. SA-050CA-0032-WWJ, 2006 WL 3927168, at *8-*9 (W.D. Tex. Dec. 6, 2006). ERISA requires meaningful dialogue between the claimant and plan administrator. Following Plaintiff's October 1, 2013 statement about Defendant Aetna's failure to provide peer reviews [Dkt. No. 20-2 at 2], Defendant Aetna should have provided access to relevant information, including the identity of medical experts used to make its initial denial of Plaintiff's March 11, 2013-to-current disability claim. Had Defendant Aetna complied with its requirement to timely provide relevant information after Plaintiff's request, Defendant Aetna may have avoided another procedural problem – failing to identify the medical experts with whom it consulted to determine Plaintiff's claim.

**E. Relying on Same Professionals at Initial and Appellate Denials, 29 C.F.R. § 2560.503-1(h)(3)(v)**

Plaintiff claims that Defendant Aetna consulted the same health care professionals at both the initial and appellate denial. The undersigned agrees that Defendant Aetna violated 29 C.F.R. § 2560.503-1(h)(3)(v) by relying on the same health care professionals at the initial and appellate review stage.

It appears that Defendant Aetna's use of the same professionals likely was not intentional. Aetna used a third party, MES Solutions, to obtain independent medical evaluations of Plaintiff's records. MES Solutions provided Defendant Aetna with the same reviewers, Dr. Katz and Dr. Lessin, for Plaintiff's initial and appellate reviews. At Plaintiff's initial level one review, Dr. Katz on February 3, 2013 [Dkt. No. 31 at 22] and Dr. Lessin on April 2, 2013 [Dkt. No. 31 at 27] found no functional impairment. For Plaintiff's appellate level two review, Dr. Katz on

October 18, 2013 [Dkt. No. 31 at 14-15] and Dr. Lessin on April 21, 2013 [Dkt. No. 31 at 10] again found no functional impairment.

Though Defendant Aetna may not have intended to use the same health care professionals at each stage of review, it nevertheless did so and violated 29 C.F.R. § 2560.503-1(h)(3)(v).

**F. Remedy for Procedural Violations: Remand**

The Fifth Circuit in *Lafleur* stated that remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with ERISA's procedural requirements, as the undersigned concludes occurred here for the reasons explained above. *See* 563 F.3d at 157. ERISA procedural violations of generally do not give rise to a substantive damages remedy. *See id.* When the procedural violations are non-flagrant, remand is typically preferred over a substantive remedy that the claimant might not otherwise be entitled under the terms of the plan. *See id.* at 157-58. The Fifth Circuit in *Lafleur* stated that, if the administrative record reflects a colorable claim for upholding the denial of benefits, remand is usually the appropriate remedy. *See id.* at 158. Based on the administrative record, the undersigned believes that Defendant Aetna's procedural errors do not give rise to a substantive damages remedy and that remand, as Plaintiff requests, is the appropriate remedy.

**Recommendation**

Plaintiff's Motion to Remand Claim for Administrative Reconsideration [Dkt. No. 20] should be granted to the extent explained above, and the Court should

...
...

remand the case to the plan administrator for a full and fair review regarding the denial of benefits consistent with these findings and conclusions, which remand pretermits the necessity of reviewing the denial on the merits.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 18, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE